**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| BRIAN WILSON, | ) | No. 79867-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF RETIRMENT SYSTEMS, | ) | |
| | ) | PUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — After over 33 years of police service, Brian Wilson retired from his position as chief of police for the City of Federal Way and sought to collect his Law Enforcement Officers' and Fire Fighters' Retirement System Plan 2 (LEOFF 2) retirement benefits. The Department of Retirement Systems (Department) denied Wilson's retirement benefits because, after leaving the police force, Wilson took a new job as chief of staff for the mayor of Federal Way. Wilson sought judicial review of the Department's final order under the Administrative Procedure Act (APA), ch. 34.05 RCW. The superior court reversed the Department's final order concluding that the Department was equitably estopped from denying Wilson's retirement benefit. The

Department appeals, arguing that the superior court erred because equitable estoppel may be used only as a "shield" or defense, not as a "sword" or cause of action. Because Wilson raised equitable estoppel as a defense to the Department's denial of his earned retirement benefits, we conclude that the trial court did not err, and affirm.

FACTS

LEOFF 2 is a public retirement plan for the State's law enforcement officials and fire fighters. Any LEOFF 2 member at least 53 years old and has at least "five service credit years of service" is eligible to retire and to receive retirement benefits. RCW 41.26.430(1). Any member eligible to receive retirement benefits "shall be eligible" to begin receiving their retirement benefit after applying with the Department. RCW 41.26.490(1). Retirement benefits "shall accrue from the first day of the calendar month immediately following such member's separation from service." RCW 41.26.490(1). A person is "separated from service" on the date that they have "terminated all employment with an employer." RCW 41.26.490(5).

Wilson began his law enforcement career with the Renton Police Department on May 1, 1980. Wilson enrolled in LEOFF 2 at that time. In May 1996, Wilson joined the newly formed police department for the City of Federal Way as deputy chief. Wilson became chief of police for Federal Way in December 2006.

In November 2013 James Ferrell was elected mayor of Federal Way. Shortly after, Wilson met with Ferrell to discuss pressing issues in the city. Ferrell discussed hiring Wilson as his chief of staff. Wilson expressed interest in the position, but indicated that he intended to retire from law enforcement and wanted to ensure that he received his LEOFF 2 retirement benefits.

Wilson worked on his transition with Jean Stanley, the city's human resources director, and Patricia Richardson, the city attorney. Wilson reiterated to Stanley that he intended to retire from LEOFF 2, and "his expectation that all steps would be done properly to accomplish that." Stanley contacted the Department to ensure that Wilson would receive his LEOFF 2 retirement benefits. As the Department's presiding officer explained:

> On December 19, 2013, Ms. Stanley telephoned the Department for information about retirement from LEOFF. She spoke with Employer Support Specialist Seth Miller, whose job duties included responding to inquiries from retirement system employers. Their five-to-fifteen-minute conversation covered steps necessary for the City's police chief to receive his LEOFF retirement benefit, in the context of future employment with the City in a general government, PERS-eligible position.[1] Ms. Stanley knew that in PERS, a 30-day break in employment had to be observed or a retiree could lose retirement benefits, and she asked if there was a similar condition for retirement from LEOFF. Mr. Miller responded that LEOFF did not have a similar requirement for a particular period of absence to avoid a payment penalty, so taking a new position even the day after termination from a LEOFF position would not affect the police chief's LEOFF retirement. He pointed out to Ms. Stanley that there could be advantages for the LEOFF member if he became a member of PERS without taking retirement from LEOFF (dual membership), but he understood Ms. Stanley's inquiry as a request for general information on the subject of LEOFF retirement, rather than advice for a particular individual's circumstances.
>
> Mr. Miller emphasized that clear termination of the LEOFF employment would be key. He advised that the City should follow its normal employment termination process for the particular type of employee. He told Ms. Stanley that while different employer's normal procedures for terminating employees might vary, commonly an employ would return all employer-owned items (such as vehicles and credit cards), and all items that would allow access to the employers' security and IT systems (such as key cards and access codes), and the employer would be expected to remove the individual as an active employee from the employer's HR and payroll systems. He mentioned that a retirement party might be expected.

---

[1] PERS is the Public Employees Retirement System which applies generally to all public employees not covered by LEOFF or other special retirement plans. Ch. 41.40 RCW.

When Stanley spoke with Miller, the Department did not have a rule defining the term "separation from service" in RCW 41.26.490(5). Miller's advice to Stanley tracked Department published materials at the time. For example, the Department publishes overview booklets of general information for LEOFF members. Between 2006 and 2014, the booklets advised that benefits would be effective on the first day of the month following the end of employment. For LEOFF 2 retirees, the booklets stated that a retiree that returned to work in positions eligible for membership in other Department administered systems, such as PERS, could participate in the new system, "in which case their LEOFF benefit would be temporarily stopped or suspended, or not to participate, in which case they would continue to receive their LEOFF retirement benefit."

The Department also published handbooks for members of the retirement systems it administers. Much like the booklets, between June 2011 and April 2015, the LEOFF 2 handbook explained the choice available to LEOFF retirees that returned to work in a position covered by another retirement system such as PERS. As with the booklets, the handbooks were silent about how long between separating from service under LEOFF 2 and returning to work.

> To be covered under return to work rules, you must first retire by terminating all employment with your employer. This is called separating from service. Separating from service demonstrates that you've completed the necessary actions of leaving employment.
>
> If you then decide to return to public service in Washington, your benefit may be affected, depending on the position you return to.
>
> If you return to work in a position that is eligible for membership in the Washington State Public Employees' Retirement System (PERS) . . . you

can choose to continue to receive your benefits or you can choose to become a member of that retirement system.

If you think you might be returning to work after retirement, please call us to see if your benefit will be affected. You'll also find helpful information in the publication <u>Thinking About Working After Retirement?</u>

The referenced <u>Thinking About Working After Retirement?</u> is a specialized two-page brochure for retirees. Beginning with the July 2011 version, the LEOFF 2 brochure explained what it meant to "separate from service" before returning to work. As with the booklets and handbooks, the brochure did not identify how long a LEOFF 2 retiree needed to remain separated from service before returning to work.

When do I become a retiree?

It's important to remember that you must retire before you can be covered under the return to work law. To retire you must:

- Meet the age and service requirements;

- Terminate all employment with your employer by completely separating from service; and

- File an application for retirement with DRS.

Separating from service means that you've completed the necessary actions of leaving employment. For example, you've returned any employer issued items, your computer access has been shut off and your employment has been ended in the payroll system.

If you are eligible to retire when you separate from service, your effective retirement date is the first day of the following month.

In summary, as of January 2014, no Department publication stated that a person following the usual procedures in separating from service and terminating all employment in his present LEOFF position would be prohibited from receiving his retirement benefits if he returned to work with that same employer in a different position

after retirement. And no Department publications stated that employees could not have a reasonable expectation of receiving their LEOFF benefits if they were re-employed with the same employer in a different position. Instead, Department publications confirmed that a person could retire from LEOFF, accept new work as a public employee, and continue to receive their LEOFF retirement benefits so long as they did not participate in another State retirement program such as PERS.

On January 6, 2014, Wilson completed his application for retirement using the Department application form for LEOFF 2 service retirement. Wilson listed the effective date as January 15, 2014. Also on January 6, 2014, Wilson signed another Department form titled "LEOFF Plan 2 Retiree Re-employment." The form listed two options for re-employment retirement benefits.

> As a LEOFF Plan 2 retiree eligible for membership in another retirement plan administered by DRS, you have two options:
>
> 1. <u>Become a member</u> of the new retirement plan and temporarily stop receiving your monthly LEOFF Plan 2 retirement benefit.
>
> 2. <u>Not become a member</u> of the new retirement plan and continue to receive your monthly LEOFF Plan 2 retirement benefit.
>
> You must choose between one of these two options when you begin working in a position covered by the [PERS].

Wilson checked the second box, "I choose to <u>Not become a member</u> of the DRS-administered retirement plan for which I am eligible." Wilson turned in all City equipment, he was deactivated from all security systems, he was removed from the City's payroll system, and he was otherwise removed from the City's computer systems. He completed a checklist of termination items with Stanley.

Wilson was not employed by the City from January 15 to January 20, 2014. On January 21, 2014, Wilson began as chief of staff for the mayor.

Wilson expected to begin receiving his LEOFF 2 benefits in February 2014. Instead, on February 21, 2014, a plan administrator with the Department wrote Wilson informing him that his application for retirement benefits was denied because he had "never completely separated or severed all employment with the City of Federal Way as required." Wilson "was shocked by this notification, believing that he and the City had taken all the steps necessary to comply with requirements for him to receive his LEOFF retirement."

In March 2014, after the Department denied Wilson's LEOFF 2 benefits, the Department revised the Thinking About Working After Retirement? brochure by adding the following language:

> You have not terminated all employment with your employer if you accept a verbal or written offer of employment with the same employer before you separate from your LEOFF position. You must complete the necessary actions of leaving employment before you accept a new job with the same employer, even if your new job is within a different department or division of that employer, or the new job is not LEOFF eligible.[2]

On June 19, 2014, Wilson petitioned the Department for review, challenging the denial of his benefits because it violated basic contract and agency law. The

---

[2] Two years later, in May 2016, the Department amended WAC 415-02-115 to add a new section:

(3) If I terminate from my position with an understanding that I will return to service with the same employer in an ineligible position or as an independent contractor, will I have separated from service? No. If, at the time of your termination, there was an understanding between you and your employer that you would return to work for that employer in any capacity, including in an ineligible position or as an independent contractor, you have not separated from service and not eligible to retire. WAC 415-02-115.

Department affirmed its decision to deny Wilson's pension, determining that Wilson did not fully separate from the City based on his expectation of future employment.

On February 9, 2015, Wilson appealed the petition decision to the Department's presiding officer. Both parties moved for summary judgment. On March 8, 2017, the presiding officer denied both motions, but agreed with the Department that a valid "separation of service" under RCW 41.26.490 requires that the member have no reasonable expectation of continuing employment with the employer at the time of separation. After a hearing to determine whether the facts of Wilson's separation met the separation of service standard, and whether equitable estoppel applies to preclude the Department from making this argument, the presiding officer issued a final order on July 20, 2018. The presiding officer affirmed the Department's decision to deny Wilson his LEOFF 2 retirement benefits from February 2014 to November 2016.[3]

Wilson petitioned for judicial review in King County Superior Court. Wilson argued that: (1) "separation from service" under RCW 42.26.490 does not require "no reasonable expectation" of continuing employment with the employer; (2), alternatively, if the "no reasonable expectation" standard is correct, the Department was required to undergo APA rulemaking before applying that standard; and (3) the Department was equitably estopped from denying Wilson LEOFF 2 retirement benefits from February 2014 to November 2016.

The superior court reversed the Department's final order. The trial court determined that it was reasonable for the Department to interpret of "separation of

---

[3] Wilson worked as chief of staff to the mayor until he retired in November 2016, which was the first month that the Department began paying his LEOFF 2 retirement benefits.

service" in RCW 41.26.490(5) to mean the employee has no reasonable expectation of returning to service. The court also concluded that the Department was not required to conduct APA rule making before applying its interpretation of "separation of service" to Wilson. The court concluded, however, that the Department's application of its new interpretation was inequitably applied to Wilson.

The superior court explained:

Nothing in any DRS publication in existence in January 2014 supports the position that a person following the usual procedures in separating from service and terminating all employment in his present LEOFF position would be prohibited from receiving his retirement benefits if he returned to work with that same employer in a different position after retirement. Further, there was nothing in any Department publication in existence in January 2014 to support the position that to fully separate from service an otherwise eligible employee would have to do more than complete the usual steps of terminating employment such as returning any employer-issued items, shutting off computer access, and having employment ended through the payroll system. No publication informed an employee that he could not have a reasonable expectation of re-employment with the same Department-employer in a different position at the time of separation.

The court also found that as of January 15, 2014, Wilson had completed all of the necessary actions of leaving employment referred to by the plan administrator's February letter and available from the Department's website. The court concluded that:

[a]lthough this interpretation is within the Department's authority and is reasonable, it is inequitably applied in Wilson's case because the Department failed to provide any notice to Wilson or any other employee of the Department's new interpretation of the law. The Department had many simple methods available to it to provide this information: post it onto its website, provide appropriate training to its advisors and/or include the information in its retirement seminars. So, although the court finds it is a reasonable interpretation and within its authority, it is troubled by the lack of any notice to Brian Wilson before the Department applied this new interpretation of the law to his case.

The superior court reversed the final order's denial of Wilson's equitable estoppel claim to prevent the Department from denying Wilson the LEOFF 2 benefits, finding that the Department wrongfully denied Wilson his benefits from February 1, 2014, to November 30, 2016. The court determined that the Department owed Wilson $266,934 in benefits. The court also awarded Wilson $12,000 in attorney fees. The Department appeals.

ANALYSIS

This case required review of an administrative agency's decision under the APA. In reviewing the agency's decision, we sit in the same position as the trial court and apply the APA's standards directly to the agency's administrative record. Sloma v. Dep't of Ret. Sys., 12 Wn. App. 2d 602, 613, 459 P.3d 396 (2020). The party challenging the agency's final order has the burden of proving that the agency's final action was invalid. RCW 34.05.570(1)(a).

Can Wilson Invoke Equitable Estoppel?

Central to the Department's appeal is its argument that the superior court erred in concluding that the Department was equitably estopped from denying Wilson's claim for his LEOFF 2 benefits after retiring from his position in law enforcement. This is so, the Department contends, because equitable estoppel cannot be used as a sword, or cause of action.[4]

The doctrine of equitable estoppel "prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a

---

[4] The Department also argues that its interpretation of "separation from service" in RCW 41.26.490, to include the requirement that an employee have no reasonable expectation of returning to work for the same employer is reasonable and that it did not have to undergo rulemaking under the APA prior to denying Wilson's LEOFF 2 benefits. The superior court agreed with the Department on both of these claims and Wilson does not disagree.

-10-

party who has justifiably and in good faith relied." Silverstreak, Inc. v. Washington State Dep't of Labor & Indus., 159 Wn.2d 868, 887, 154 P.3d 891 (2007). "Equitable estoppel is available only as a defense to claims against enforcement of a contract: it is a 'shield' while promissory estoppel can be used as a 'sword' in a cause of action for damages." McCormick v. Lake Washington School Dist., 99 Wn. App. 107, 117, 992 P.2d 511 (1999) (citing Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 259, 616 P.2d 644 (1980)); Byrd v. Pierce County, 5 Wn. App. 2d 249, 257, 425 P.3d 948 (2018). As recognized in the "notes on use" to the pattern jury instruction for the elements of equitable estoppel, "estoppel may be raised by a party seeking enforcement of a contract, i.e., as a defense to a defense." 6A Washington Practice: Washington Pattern Jury Instructions: Civil 302.05 (7th ed. 2019) (WPI).

In Silverstreak, for example, a group of truck drivers sought to recover "prevailing wages," rather than the material wages they were paid by the suppliers. Silverstreak, 159 Wn.2d at 875. The Department of Labor and Industries (L&I) determined the suppliers owed an additional $500,000 to the truckers after concluding that the suppliers failed to pay the truckers a prevailing wage. Silverstreak, 159 Wn.2d at 896. The suppliers challenged the decision administratively, arguing that L&I misinterpreted prevailing wage law, and alternatively with a defense of equitable estoppel. Silverstreak, 159 Wn.2d at 886. The court held that the interpretation was valid, but applied equitable estoppel in this case. Silverstreak, 159 Wn.2d at 887. The court allowed the suppliers to assert equitable estoppel as a defense against the truck drivers' claim for more money, using the doctrine as a shield against the drivers' claim. Silverstreak, 159 Wn.2d at 981.

Division Two of this court recently addressed the use of equitable estoppel in Sloma. In Sloma, after more than 30 years of service in PERS, the retiree, Donald Sloma, made an irrevocable election to have his retirement benefit based on his salary at 30 years and to have all subsequent contributions refunded. Sloma retired in 2004 and began receiving his retirement benefit based on his 30-year salary. The Department refunded to him all PERS contributions his election. Sloma, 12 Wn. App. 2d at 608-10. In 2012 Sloma accepted a new PERS eligible position at a higher salary. Based on a phone call with Department staff, Sloma believed he would be able to re-enter PERS and re-retire based on the new rate. Sloma did not inform the Department staff that he had made the irrevocable election at 30 years. When Sloma tried to retire again in 2015, he was informed that because he had made the irrevocable election in 2004 to cap his benefit at 30 years and have subsequent PERS contributions refunded, his benefit would remain at the 2004 level. Sloma, 12 Wn. App. 2d at 611-12.

Sloma appealed, arguing that "equitable and promissory estoppel apply to compel DRS to calculate his retirement benefits using his higher Thurston County salary." Sloma, 12 Wn. App. 2d at 607. Division Two of this court concluded that the retiree could not rely on equitable estoppel to support his cause of action, holding that

> Sloma misplaces his reliance on the equitable estoppel doctrine by attempting to use it as a sword to compel DRS to recalculate his AFC based on the compensation he earned after he made his irrevocable election under RCW 41.40.191. Because equitable estoppel cannot be the basis for a cause of action, Sloma cannot invoke it here.

Sloma, 12 Wn. App. 2d at 621.

Here, it is undisputed that Wilson is due his pension. He worked the requisite number of years and reached the requisite age. Wilson has, in essence, a contractual

right to his LEOFF 2 benefits. By denying him of his LEOFF 2 benefits, the Department is denying Wilson his right to his earned pension. Thus, rather than raise equitable estoppel as a sword, Wilson properly asserted equitable estoppel as a defense to the Department's defense of not paying him his pension because of Wilson's alleged breach. To appeal the Department's denial of his pension, Wilson's only remedy was to appeal the decision. RCW 34.05.570(1)(a). Wilson followed the only path available to him to seek relief, and just because he had to file an appeal does not mean that he was using equitable estoppel as a sword.

This case is also readily distinguishable from Sloma. In Sloma, the retiree was seeking to use equitable estoppel to affirmatively change his retirement benefits from the amount he previously, and irrevocably elected, to a new level based on a conversation with Department staff. 12 Wn. App. 2d at 607. Wilson, in contrast, was only asking for what he had earned. Unlike Sloma, Wilson is not asking for something different from what he earned during his service in law enforcement. He is simply asking for the pension that he undisputedly earned.

For these reasons, Wilson's defense of equitable estoppel is properly asserted against the Department's attempt to deny him his pension based on a different interpretation of separation of service.

Did Wilson Demonstrate Equitable Estoppel?

The Department argues that Wilson did not demonstrate the elements of equitable estoppel by clear, cogent, and convincing evidence. We disagree.

A party asserting equitable estoppel against the government must establish five elements by clear, cogent, and convincing evidence:

> (1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or action, (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action, (4) estoppel is "necessary to prevent a manifest injustice," and (5) estoppel will not impair governmental functions.

Silverstreak, 159 Wn.2d at 887.

Wilson demonstrated the Department made inconsistent statements. The Department's pre-January 2014 statements, including employee pamphlets, handbooks, and brochures, were consistent that earned LEOFF 2 benefits would be paid the first of the month after the employee separated from service. The Department's publications uniformly stated that separation from service meant completing necessary actions such as returning issued items, shutting off computer access and ending employment in the payroll system. The Department's publications, including its official form for returning to work, also uniformly explained that an employee could return to work in the public sector and maintain their LEOFF 2 benefits by opting out of any other retirement program such as PERS. Finally, the Department's publications made clear that if there were any questions, the employee should contact the Department—which is precisely what the City did. The Department's spokesperson, Miller, offered the same information as the Department's existing publications.

As of January 2014, no Department publication stated that a person following the usual procedures in separating from service and terminating all employment in his present LEOFF position would be prohibited from receiving his retirement benefits if he returned to work with that same employer in a different position after retirement. No Department publication stated that a LEOFF retiree could not have a reasonable

-14-

expectation of receiving their LEOFF benefits if they were re-employed with the same employer in a different position. And no Department publication stated that a retiree would lose their LEOFF benefits if they retired with a reasonable expectation of returning to work with the same employer in a different function.

Wilson also demonstrated that he relied on the Department's prior statements. Wilson resigned his law enforcement commission legally precluding him from acting as a police officer again. Then, consistent with the City's discussion with Miller, Wilson followed all necessary steps to terminate his employment as chief of police and filled out the Department's form for returning to work, rejecting any benefits under the PERS system.

There is no reasonable dispute that Wilson demonstrated injury. The Department denied Wilson his LEOFF 2 benefits between February 2014 and his ultimate retirement from the chief of staff position on November 30, 2016. 34 months of $7,851 per month deprived Wilson of $266,934 in benefits. While Wilson did receive his salary as chief of staff, his expectation based on the Department's prior statements, including the return to work form, was that he would receive his LEOFF 2 benefits and salary from the new position so long as he did not accept future PERS retirement benefits from the new position.

It would also be manifestly unjust for the Department to avoid paying Wilson's LEOFF 2 benefits after issuing multiple publications confirming that: (1) an employee separated by service by taking normal steps for termination and (2) that an employee can retire from LEOFF, take new State employment, and continue to receive their LEOFF 2 benefits so long as they rejected additional retirement benefits under the new

-15-

employment. While the Department's new interpretation of the separated from service requirement may be reasonable, its retroactive application to Wilson is manifestly unjust.

And finally, the State does not argue that estoppel will impair governmental functions.

We agree with the trial court and conclude that the record shows that Wilson demonstrated the elements of equitable estoppel by clear, cogent, and convincing evidence.

<u>Attorney Fees</u>

The Department argues that the trial court erred in awarding Wilson attorney fees because its actions were substantially justified. We disagree.

Under the equal access to justice act (EAJA), "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4.84.350(1). "'Substantially justified means justified to a degree that would satisfy a reasonable person.'" <u>Silverstreak</u>, 159 Wn.2d at 904 (quoting <u>Moen v. Spokane City Police Dep't</u>, 110 Wn. App. 714, 717, 42 P.3d 456 (2002)). "An action is substantially justified if it had a reasonable basis in law and in fact." <u>Raven v. Dep't of Social and Health Servs.</u>, 177 Wn.2d 804, 832, 306 P.3d 920 (2013). We review a trial court's award of attorney fees under the EAJA for abuse of discretion. <u>Raven</u>, 177 Wn.2d at 832. "A trial court abuses its discretion when it makes a decision that is manifestly unreasonable, based on untenable grounds, or based on untenable reasons." <u>Raven</u>, 177 Wn.2d at 832.

Here, while the trial court found that the Department's new interpretation of "separated from service" was reasonable, it concluded that the Department's application of its new interpretation to Wilson was not substantially justified:

> The court does not find the Department's actions were substantially justified based on the Department's historical interpretation and application of RCW 41.26.490(5) and the lack of notice of any change before attempting to apply a new interpretation to the petitioner. Given the department's website, publications, training, and oral representations made to the HR representative confirm the department's historical interpretation of "separation of service", the department was not substantially justified to apply a new interpretation to Mr. Wilson.

Based on the record before us, we cannot conclude that the trial court abused its discretion in awarding Wilson attorney fees and costs.

Wilson seeks attorney fees on appeal under RAP 18.1 and RCW 4.84.350. Because Wilson prevails on appeal, we award attorney fees on appeal subject to compliance with RAP 18.1 and the limitations in RCW 4.84.340(3).

Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____          _____
Chun, J.                                  Verellen, J.